Charles Edward **MATTHEWS**, Ezekiel Brown and Raymond Cook, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 24491.

United States Court of Appeals
Fifth Circuit.

March 3, 1969.

laws. Title 21, U.S.C.A. Section 176a; Title 26 U.S.C.A. Sections 4741(a), 4744 (a) (1), 4744(a) (2), and 7237. The trial below involved the three Appellants here and one of the other alleged conspirators. Disposition of the charges against the remaining defendants for the most part followed the granting of separate trials or the entry and acceptance of pleas of guilty.

The geographical area of the alleged conspiracy reached from the Mexican border at points near Laredo, Texas and Los Angeles, California to the New York-New Jersey area on the eastern seaboard of the nation. The general conspiratorial scheme involved the illegal and clandestine importation of large quantities of marihuana into this country at the indicated points on the Mexican border and the transportation thereof to the New York-New Jersey area. The alleged conspiracy dated from November 2, 1961 to the time of the indictment on or about March 10, 1966; the eighteen alleged overt acts of conspiracy dated from on or about November 13, 1961 to on or about November 22, 1965. The center of the conspiracy was in the New York-New Jersey area from whence the orders for the contraband were made. It was there that the Appellant Raymond Cook allegedly became involved in the conspiracy after dissatisfaction developed over the manner in which arrangements were being made for the transportation of the contraband. The Appellants Charles Edward Matthews and Ezekiel Brown were allegedly the main suppliers in the Los Angeles area and engaged occasionally in the transcontinental deliveries. Such is the import of the overt acts of conspiracy charged against these Appellants.

The Appellants Brown and Matthews bring on a wide ranging attack against their convictions and raise issues pertaining to both the merits and the constitutionality of the trial. Appellant Cook's attack is not dis-similar thereto

---

Clyde Woody, Marion Rosen, Houston, Tex., Charles R. Burton, Austin, Tex., for appellants.

Ernest Morgan, U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before GOLDBERG and CLAYTON*, Circuit Judges, and HANNAY, District Judge.

HANNAY, District Judge:

This appeal is by three of seventeen individuals charged by indictment with conspiracy to violate the federal narcotic

---

* Judge Clayton did not participate in the decision of this case. The present opinion is rendered by a quorum of the court pursuant to 28 U.S.C.A. § 46.

and has been added to by a Supplemental Brief filed by Cook's appellate counsel at the direction of the Court and about which more later.

## A.

### THE APPEAL OF APPELLANTS BROWN AND MATTHEWS:

#### I.

1. The alleged violation of their rights under the Jencks Act, Title 18 U.S.C.A., Section 3500, for production of statements and reports of witnesses. The Act states:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpoena discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

(d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

a. The government called one Edward Faison to prove the existence of the con-

spiracy. Faison testified that he had repaired certain vehicles owned and operated by the co-defendant Albert Hillaire. In response to the trial judge's inquiry, the United States Attorney stated that one Mr. Murphy, the principal investigator for the government, had prepared a memorandum as a *result and after the interview* with Mr. Faison. (Emphasis added throughout.) No statement had been signed by Mr. Faison. The trial judge called for and inspected the Murphy memorandum *in camera*. This memorandum had been dated practically three weeks after the interview with Faison. The record does not show that it was either adopted or approved by Faison. The trial judge later announced orally that he had examined the notes and declined to turn them over to Appellants' counsel.

b. One Wynn L. Lyday testified for the government concerning the purchase of a vehicle; this evidence was material in establishing the conspiracy. On cross-examination Lyday testified that he was interrogated by a government agent who took notes at the end and then asked him if they were correct.

When this arose as a Jencks Act issue at the trial, the trial judge found that the notations were in fact made, that some of them were read back to the witness and verified, the witness was not sure that the entire statement was read to him for verification, but that what was read to him was verified. In short, the witness did not adopt the statement. Subsequently, the witness testified for the government that he did not know how many pages of notes were taken by the agent, that he did not personally read the notes, that the government agent did ask him to confirm or verify some of his answers. Not remembering exactly, the witness did not think that the agent had read the notes in their entirety to him for confirmation.

c. The government's principal witness in the case, William Barber, had been interrogated by Murphy. Appellants Brown and Matthews contend that the government refused to produce all of the documents which the prosecution had in its possession. These appellants received a ten-page document which was identified as the testimony of William Barber. The record shows that this document contained all of the information given by Barber which the prosecution then possessed and information in addition to that which had been secured by Murphy. This document is before this Court. On this point Murphy's testimony is to the effect that he took notes from Barber but not verbatim notes and did not read them back to Barber at the time; that these notes were thrown away after he put them in the form of a report. This report was in his own handwriting and was later typed by a secretary. The notes were not reviewed by Barber. The interviews were not recorded stenographically. Murphy did not, according to his testimony, review his notes during the course of conversation with Barber.

d. Appellants object to the non-production of grand jury minutes. These minutes had been taken before a state grand jury in New York for a New York state prosecution. There were two government witnesses in this category. It appears that the minutes pertaining to one of them were not available; in the other instance, they were not required to be produced by the trial court.

■■ 2. Any statement within the purview of the Jencks Act must be produced upon demand by the defense where the witness has testified as a government witness. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287; Campbell v. United States, 365 U.S. 85, 81 S.Ct. 413, 5 L.Ed.2d 428. The purport of the Jencks Act as it is particularly relevant here was stated by the late Mr. Justice Frankfurter in Palermo v. United States, supra, at 350, 79 S.Ct. at 1223:

" * * * One of the most important motive forces behind the enactment of this legislation was the fear that an expansive reading of Jencks would compel the undiscriminating produc-

tion of agent's summaries of interviews regardless of their character or completeness. Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations. * * *"

The producibility of a statement depends upon its being within the particularities of the statute. Palermo v. United States supra.

■ It is the primary duty of the trial judge to determine the producibility of a statement under the Jencks Act. Scales v. United States, 367 U.S. 203, 258, 81 S.Ct. 1469, 6 L.Ed.2d 782. Although his ruling is subject to appellate review, it is sustainable unless clearly erroneous.

■■ The trial judge is granted substantial latitude in determining producibility, including authority to interrogate either the witness or the government agent or conduct an *in camera* inspection. Saunders v. United States, 114 U.S.App.D.C. 345, 316 F.2d 346, 349 and authorities cited. Of the Faison report, the *in camera* insepction was made. Considering the heretofore mentioned facts of the Faison statement, it is clearly not Jencks Act material within the ruling of Palermo v. United States, supra. See also: United States v. Allegrucci, 3 Cir, 299 F.2d 811; Badon v. United States, 5 Cir, 269 F.2d 75, cert. denied, 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152; Papworth v. United States, 5 Cir, 256 F.2d 125, cert. denied, 358 U.S. 854, 79 S.Ct. 85, 3 L.Ed.2d 88, for the propositions that the Jencks Act does not apply where the agent's summary was made after his talk with the government witness and the witness

did not see or adopt the condensed written statement.

■ In the case of the witness Lyday there was not a verbatim or even a substantially verbatim repetition of the notes by the agent to the witness or a confirmation by the latter of the completeness of them. The record demonstrates that the agent simply asked if these notations were correct and if this was the truth concerning this witness' story—to which an affirmative answer was given. The ruling of the trial judge that the statement was not adopted by the witness within the meaning of the Jencks Act, Title 18, U.S.C.A., Section 3500(e) (1), is not clearly erroneous on the basis of the facts appearing of record. Campbell v. United States, 373 U.S. 487, 493–495, 83 S.Ct. 1356, 10 L.Ed.2d 501. There is substantial evidence in the record to support the conclusion that what the agent did after the interview was no more than to ask the witness if what he said was the truth and confirm the fact that he made the statement. Other considerations militate convincingly against the conclusion that the trial judge committed clear error. There is no right to statements relating to mere collateral and incidental aspects of a witness' testimony. United States v. Cardillo, 2 Cir., 316 F.2d 606, 615, cert. denied, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55. In addition to his fair exercise of discretion in this particular, the trial judge affirmatively stated that the agent's summary was substantially the same as Lyday's testimony. It is not fatal error to fail to produce a statement that is corroborative of a witness' testimony. United States v. Annunziato, 2 Cir, 293 F.2d 373, 382, cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134. Clear error by the trial judge on this point is not shown. See also and compare: Williams v. United States, 119 U.S.App.D.C. 177, 338 F.2d 286.

■ No reversible error is shown here by the fact that Lyday was interviewed by the prosecution during a recess on the Jencks Act question while still a witness. Nor is the agent's de-

struction of his notes in accordance with customary administrative procedure reversible error where the information is available in a signed statement or interview report. Campbell v. United States, supra; Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256. This principle fairly answers the objection to the testimony of the witness Barber. See in particular: Hayes v. United States, 8 Cir, 329 F.2d 209, cert. denied, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748, where several interviews were made by the agent and he took incomplete longhand notes thereof. Thereafter, a summary was made but the witness withheld his signature to a summary until it had been amended. Here, as there, there is not clear error in the trial court's determination that the original notes on Barber were not within the purview of Section (e) (2) of the Jencks Act. To be considered in this connection is the categorical demand by the defense for the Barber notes, the amplitude of what was made available by the prosecution in relation to what was still in existence, and the good faith and resulting harmlessness regarding the prior disposal of the original notes. See: Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304, on the question of harmlessness.

■ The production of Grand Jury minutes is not controlled or required by the Jencks Act. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 398, 79 S.Ct. 1237, 3 L.Ed.2d 1323, reh. denied 361 U.S. 855, 80 S.Ct. 42, 4 L. Ed.2d 94. See also: United States v. Killian, 7 Cir., 275 F.2d 561, vacated on other grounds 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256, reh. denied 368 U.S. 979, 82 S.Ct. 476, 7 L.Ed.2d 441.

■ The refusal of the trial judge to require production of the New York state grand jury minutes is free of error. The guarantees of the Jencks Act were not abridged herein.

## II.

The legality of testimony of state and federal law enforcement officers with reference to the fact that these Appellants had been arrested in Oklahoma and found to be transporting some one hundred and sixty-two packages of marihuana by automobile:

The issue is the existence of probable cause for the arrest of Appellants and whether the search which resulted therefrom and produced the contraband was lawful. Appellants were apprehended in an automobile and there was no formal warrant for arrest. We look to the facts of record that will support probable cause, if any, for the arrest.

The federal customs agent testified that he had previously arrested one Herbert Smith who dealt in marihuana and who said his contact in this illegal traffic was the Appellant Eddie Matthews. Smith told the customs agent of two vehicles owned and/or operated by Matthews; one of these bore resemblances to the vehicle in which Appellants were arrested in a closely exact degree. Both of these vehicles were subjected to surveillance by the customs agents as was the Appellant Matthews. The agent recognized that Matthews was maintaining contact with people known to be involved in narcotics. The customs agent was then informed that these Appellants would be leaving the Los Angeles area sometime in March with a substantial quantity of marihuana. It was later reported that these Appellants had departed the Los Angeles area for the east. The anticipated route of travel was the interstate highway to Chicago. With this information, the customs agent caused a radiogram message to be issued throughout the federal Customs Agency Service. The Oklahoma authorities received the message via the federal customs office in Laredo, Texas and the Texas Department of Public Safety. The text of the message is relevant:

"Reliable information indicates that a 1959 two-tone blue Ford Ranchero, California license number R 69450 left this city 6:00 a. m. bound for Chicago, Illinois. Vehicle contains approximately 300 pounds of marihuana secreted in the panels, which are located

in and around the truck bed. Please notify state and local authorities in Texas and Oklahoma to be on lookout for such a vehicle in order that positive action might be taken. In all probability vehicle is taking Route 66 to Chicago. Signed, Ray V. Bater. Thank you. We will handle things. K. Lewis. GA, if necessary. N. Bater, V.A.H."

The arrest was made on Route 66 near Bethany, Oklahoma close to midnight on April 4, 1962. The radiogram was issued on or about March 12, 1962. The arresting officer testified that he had both seen the contents of the radiogram and heard of them. The highway surveillance and the ensuing stoppage were based upon the strong similarity between the information and the circumstances surrounding the vehicle. There was indeed a difference in the license number but it was nonetheless a California license plate with the same initial letter. There was no lack of co-operativeness on the part of the arrestees at the scene of the arrest. It is unnecessary here to pass on the issue of consent search. It appears from the record that a search into the paneling of the vehicle was impossible on the highway because of lack of tools with which to do it. The vehicle was thereupon and immediately taken to the police station. Testimony of record further reveals that a screw driver tool was thereupon employed upon a panel of the vehicle with the result that several plastic sacks containing marihuana were discovered therein. The vehicle was thereupon removed to a garage where adequate tools were available to remove the bed out of the rear of the Ranchero vehicle. Some three hundred pounds of marihuana were discovered there.

The signal feature of the arrest and consequent search here is that it involved a moving vehicle strongly suspect of transporting contraband. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

■ Probable cause for arrest finds support here in extensive government investigation into a massive interstate narcotics operation that bore the fruit of detailed leading information which in its substance and crucial aspects was timely communicated to the arresting officers. The record contains the testimony of the federal customs agent who sent the radiogram. His awareness of the situation was based not only on reliable information but concretely upon his own investigation as well. The arresting officer testified that the information in the radiogram was the effective basis for the arrest. Coupled with the high degree of mobility of the suspect vehicle, the passengers, and the contraband probable cause clearly existed in this case: McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62. Compare: Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. In *McCray* it was stated:

"* * * Unlike the situation in Beck v. Ohio, 379 U.S. 89, [85 S.Ct. 223, 13 L.Ed.2d 142,] each of the officers in the case described with specificity 'what the informer actually said and why the officer thought the information was credible'. 379 U.S. at 97 [,85 S.Ct. at 229]. The testimony of each of the officers informed the court of the 'underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the information * * was "credible" on his information "reliable."' Aguilar v. Texas, 378 U.S. 108, 114 [84 S.Ct. 1509]. See United States v. Ventresca, 380 U.S. 102, [85 S.Ct. 741, 13 L.Ed.2d 684]. * * *" 386 U.S. at 304, 87 S.Ct. at 1059.

Here, as in *McCray*, probable cause for the search without a warrant is established by the facts of record and the in-court testimony of the law enforcement officers involved.

■ For a search without a formal warrant to be sustainable as incident to a lawful arrest, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, it must not be too remote in point

of time and place from the arrest and the purpose for it. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777. Here, however, the crucial searches were made with all of the immediacy and dispatch practicable, indeed possible, under the circumstances. In no particular do they run afoul the proscriptions of *Preston*. See: Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.

> "* * * The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required * * *. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. * * *"

United States v. Rabinowitz, 339 U.S. at 65–66, 70 S.Ct. at 435.

### III.

Out of the foregoing arrest and seizure of these Appellants in Bethany, Oklahoma there resulted an Oklahoma state prosecution and conviction for possession of marihuana against them. They were not, and are not here, federally prosecuted for this substantive offense. Nor was the episode included as an overt act in the conspiracy indictment here. Appellants object to the introduction in evidence in this prosecution of the testimony of witnesses who appeared and testified in the state prosecution. The objected-to evidence was patently introduced for the purpose of proving up intent, similar acts or crimes, identity, the existence of a continuing plan, scheme or conspiracy, res gestae, etc.

The issue here is therefore essentially one of mere evidence rather than one of constitutionally forbidden double jeopardy.

The crime of conspiracy is a separate and distinct offense from the substantive one and the sanctions of double jeopardy are ordinarily not brought into play by a conviction for both. United States v. Campisi, 2 Cir., 248 F.2d 102, 107; United States v. Marakar, 3 Cir., 300 F.2d 513, 515–516. In instant case there is additionally an absence of identicalness both as to the accusations brought and the sovereignties in which the charges were separately prosecuted. In the area of self-incrimination, and the Fifth Amendment prohibition against governmental compulsion thereof, the guarantee has been extended to state as well as federal prosecutions. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, and Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 12 L.Ed.2d 678, 84 S.Ct. 1594. Even if there were identical charges here or charges supportable by and predicated upon the same facts, and there is neither, *Murphy* and *Malloy* would not mean that the constitutional prohibition against double jeopardy is fully upon the same footing as that against self-incrimination. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684; Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729. See also: Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175. The Oklahoma state prosecution was not, in a manner of speaking, a disguised federal trial. See: Bartkus v. Illinois, supra. Six of the seven prosecution witnesses were state law enforcement officers; only one, the customs agent from California, was a federal agent. If principles of double jeopardy applied they would be of the federal standard as this is a federal prosecution. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L. Ed.2d 199. But they do not. Nor is Fifth Amendment "due process", by analogy to the "fundamental fairness" guarantee that would be available on the double jeopardy issue in a state prosecution, Palko v. Connecticut, 302 U.S. 319,

58 S.Ct. 149, 82 L.Ed. 288, Hultin v. Beto, 5 Cir., 396 F.2d 216, offended here. The customary rules of evidence which would justify the proceedings complained of further and effectively militate against Appellants' objections on this issue.

Appellants' contend that the introduction into evidence of some five other offenses amounted to prejudicial error because they were extraneous. These included the heretofore discussed Oklahoma episode, the theft of one automobile by two of the conspirators in 1965, testimony of the commission of a traffic violation in the form of not properly registering an automobile in the State of Pennsylvania by one of the conspirators, testimony by one of the conspirators that another conspirator had purchased marihuana from a particular individual, and testimony that some five of the conspirators smoked marihuana. While the last of these objections is untimely because presented here for the first time, each of the instances is discernibly and amply connected to the overall conspiratorial scheme and/or its execution:

1. Appellants Brown and Matthews were arrested in Oklahoma in possession of approximately 300 pounds of marihuana. They were arrested, tried and convicted for this offense. The offense occurred on or about April 4, 1962.

2. Appellants contend that testimony of an admission of the commission of a traffic violation by Reginald David in the State of Pennsylvania was error. An examination of the testimony of Robert J. Drabeck, a witness produced by the Government, discloses that co-conspirator Reginald David was arrested for a traffic offense on August 12, 1965, to-wit: Absence of a registration card for the vehicle that co-conspirator David was operating. The automobile was identified as a 1963 Ford Ranchero Station Wagon and Reginald David was identified as the driver. Subsequent to Mr. Drabeck's testimony Reginald David testified that he had done business for Albert Hillaire in July of 1965 and that he was to take a car to the West Coast, leave it and bring back another car. Reginald David testified that Albert Hillaire gave him a 1959 Ford Ranchero to drive to the West Coast and that he was stopped by the State police while going through Pennsylvania enroute to the West Coast. Reginald David testified that he was to drop the car between the 3400 and 3600 blocks of Central Avenue in Los Angeles, California, and that he was to pick up a 1960 Ford Station Wagon, white. *David further testified the only way he could tell approximately when he left New York for the West Coast was by referring to his arrest or stop on the Pennsylvania Turnpike in Pennsylvania.*

3. Appellants contend that the theft of an automobile by co-conspirator Edward L. Walker and Elbert Bowser during August, 1965, was not in furtherance of the conspiracy alleged in the indictment. A review of the record discloses that William Barber testified that he had traveled to Los Angeles, California, on behalf of Albert Hillaire and Ezekiel Brown sometime *after July 19, 1965*, and that in Los Angeles he met with Appellants Brown and Matthews and picked up a car from them with approximately 250 pounds of marihuana in it and returned to the New York-New Jersey area whereupon he was arrested by New York State authorities. William Barber further testified that when he got out of jail several days later that the car he had acquired from Brown and Matthews in Los Angeles, which he had driven to New York, had been taken by the New York police and parked in front of the 44th Precinct Station in New York City and that it appeared to be in the same condition as it was in when he brought it back from California. Thereafter William Barber contacted Albert Hillaire and explained the circumstances whereupon Hillaire requested that Barber find somebody to steal the car from the Precinct. Subsequently, William Barber met co-conspirator Leonard Royall Aiken and made arrangements to steal the car. This meeting took place in a

bar operated by Edward L. Walker. The record discloses that there were no objections to the admissibility of this testimony concerning the plans for stealing the car from the Precinct Station. Edward L. Walker testified that he was approached by Leonard Royall Aiken who told him there was a car in front of the Precinct Station with California plates that he wanted stolen. Elbert Bowser was also present during this conversation. Bowser and Walker then drove to where the car was, studied its location and then acquired a tow truck from Leonard Royall Aiken. Walker and Bowser then made an attempt to steal the car and were arrested in that attempt.

4. Appellants contend that the admission of testimony by co-conspirator Edward L. Walker that co-conspirator Leonard Royall Aiken had, on two occasions, purchased marihuana from a "Spanish fellow" was error. Walker testified that in the Fall of 1964 he was approached by a Spanish fellow with a shipment of 100 pounds of marihuana. Walker passed this information on to Leonard Royall Aiken and arranged a meeting between Aiken and the Spanish fellow. Aiken purchased the marihuana and it was delivered to Aiken and Walker assisted in unloading the marihuana. Walker further testified that a week later the Spanish fellow came back with another 100 pounds of marihuana. Again Walker took the Spanish fellow to Leonard Royall Aiken. Walker received $8500.00 from Leonard Royall Aiken and in turn paid this amount to the Spanish fellow for the marihuana. The Spanish fellow referred to in this part of the testimony was Jose Vidales who testified later in the trial.

5. Appellants contend that it was error for the court to admit testimony that Clive Shervington, Albert Hillaire, Della Hillaire, Abe Hopkins and Mary Lou Brown smoked marihuana. A review of the record discloses that this testimony was not opposed to in any way by any of the attorneys representing defendants in this case. Inasmuch as it was not op-

posed to in the trial court the questions cannot be raised on appeal.

Proof of another crime which aids in or is appropriate in establishing the crime in question is admissible. United States v. Marquez, 2 Cir., 332 F.2d 162, 166, cert. denied, 379 U.S. 890, 85 S.Ct. 162, 13 L.Ed.2d 94; United States v. Kahaner, 2 Cir., 317 F.2d 459, 471–472, cert. denied, Keogh v. United States, 375 U.S. 836, 84 S.Ct. 73, 11 L. Ed.2d 65; United States v. Freeman, 2 Cir., 302 F.2d 347, 349, cert. denied, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316. Prior and subsequent crimes are admissible on the issue of intent to commit the crime in question. United States v. Klein, 340 F.2d 547, 548, 2 Cir., cert. denied, 382 U.S. 850, 86 S.Ct. 97, 15 L.Ed. 2d 89; Copeland v. United States, 80 U.S.App.D.C. 308, 152 F.2d 769, cert. denied, 328 U.S. 841, 66 S.Ct. 1010, 90 L.Ed. 1815. Prior or subsequent, the similar act should not be too remote in point of time from the offense charged. United States v. Marchisio, 2 Cir., 344 F. 2d 653. Such remoteness is not the case here. Nor is there abuse of discretion by the trial judge in admitting the prior similar acts going to the issue of intent. See: United States v. Byrd, 2 Cir., 352 F.2d 570. Proof of identity may also be established in this manner. See: United States v. Frascone, 2 Cir., 299 F.2d 824, cert. denied, 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404. Where the prior acts or crimes are clearly part of the larger scheme, have a clear connection with the crime charged, and are patently a part thereof, they are admissible in evidence. See: Banning v. United States, 6 Cir., 130 F.2d 330, cert. denied, 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556; Armstrong v. United States, 9 Cir., 327 F.2d 189, 196; Babb v. United States, 5 Cir., 210 F.2d 473, 475–476; Gordon v. United States, 6 Cir., 164 F.2d 855, 859 cert. denied, 333 U.S. 862, 68 S.Ct. 741, 92 L.Ed. 1141. Appellants cited case of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, is neither applicable nor controlling here. There is no prejudicial error in this area

of the prosecution below. Particularly is this so considering the wide ranging nature of the conspiracy here in question and the patent relevancy thereto of these separate offenses.

## IV.

Pursuant to the indictment in instant case these Appellants were arrested on February 11 and 12, 1966 by federal customs authorities. The arrests were effected in their respective residences in the Los Angeles area and *pursuant to formal warrants for their arrest.* The legality of these warrants for arrest are not in question. Appellants object to the introduction into evidence of several items seized by the arresting officers at the time of the arrests.

Appellant Matthews was arrested at approximately mid-night, February 11, 1966 and was in his residence at that time. Appellant Brown was arrested at approximately noon on February 12, 1966, the following day. He was on his premises at that time. In each case the searches proceeded forthwith *and do not appear from the record to have required an excessive length of time.* Closets, dressers, automobiles, and the persons of the Appellants appear to have been the principal objects of the searches. The residential units and their premises were comparatively small.

Two of the items were identified as taken from the wallet of the Appellant Matthews. One item, which had relevance as circumstantial evidence, was identified as a billhead, usable for the purpose of making bills and receipts. It was taken from a drawer in Brown's bedroom. It had been identified by the heretofore mentioned witness Faison, and its tender by the prosecution was not objected to by the defense at that time. Two other items had been found also in the contemporaneous search of the Appellants' premises and their automobiles located thereon. Included therein was a partly smoked cigarette containing marihuana.

 The searches here were incident to as well as contemporaneous with the arrests. United States v. Rabinowitz, supra. The Fourth Amendment question is whether or not they were reasonable. Carroll v. United States, supra; Ker v. California, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726. The facts and circumstances of each case are controlliing. Ker v. California, supra.

 Significant here is the ease with which certain quantities of marihuana can be concealed, the clandestine nature and places of possible concealment, the difficulty in finding it under these circumstances, the wide ranging nature of the conspiracy, and the breadth of evidentiary data relevant thereto. To this is added the possibility that the premises and the automobiles located thereon were utilized in furtherance of the suspect illicit operations. Appellants rely on Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876. The relevant searches here of person, premise, and automobile bear no recognizable resemblance to that in *Kremen* where "[t]he seizure of the entire contents of the house and its removal some two hundred miles away to the F.B.I. offices for the purpose of examination" had no sanction in Supreme Court authorities. Unlike here, the unconscionably oppressive seizure there bore no reasonable relation to the suspected crime. More in point here is Appellee's cited case of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, sustaining a five hour search (such a protracted search is not indicated here) where the accused had exclusive possession and control of the apartment, the items sought could have been secreted, and these items were themselves subject to seizure as both the fruit of a crime and a crime itself by means of their possession. The searches here were lawful and clearly reasonable under the circumstances presented. Harris v. United States, supra, at 152–153, 67 S.Ct. 1098.

 Moreover, the record reveals that the items taken from Matthews' wallet were not objected to at the time

of their introduction into evidence on the ground of illegal search. As a specific objection now urged for the first time it is untimely. The jury charge is free of error.

## B.

## THE APPEAL OF RAYMOND COOK

### I.

Appellant Cook's first contention is that the search and seizure of Appellants Brown and Matthews in Oklahoma was illegal. This same contention was raised by the Appellants Matthews and Brown. This contention was treated and disposed of in Section A, subsection II of this opinion.

### II.

Appellant Cook objects to the introduction into evidence of a quantity of marihuana taken from an automobile in which the co-defendant Reginald David was arrested in the State of New Mexico. David's Motion to Suppress was overruled by the trial judge. David later entered a plea of guilty as to one count in the indictment and was not rearraigned on the other.

 Neither the Appellant Cook nor the record discloses that Cook was an "aggrieved person" within the meaning of Rule 41(e) F.R.Cr.P., in regard to the David search or has standing to object thereto. See: Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441; United States v. Masterson, 2 Cir., 383 F.2d 610, 613; Sumrall v. United States, 10 Cir., 382 F.2d 651, 654–655. It is therefore unnecessary to discuss the merits of the David search which otherwise appears to be clearly within the bounds of constitutionally permissible limits.

The credibility of a witness is a question for the jury. Glasser v. United States, 315 U.S. 60, 80, 86 L.Ed. 680, 62 S.Ct. 457. Appellant Cook's contention that there is insufficient evidence to support his conviction is therefore

without merit. United States v. Kelly, 2 Cir., 349 F.2d 720, 766.

### III.

During the pendency of this appeal the Appellant Cook charged that he did not have the effective representation of counsel on appeal.

The Court therefore ordered his appellate counsel to submit a Supplemental Brief and made available the record in this case for this purpose.

In passing on this appeal this Court has listened to Cook's counsel in oral argument, read his briefs in behalf of Cook, and is convinced that Cook was well and adequately represented in this Court.

The judgment below is affirmed.