**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Joseph MANCUSO, Defendant-
Appellant.**

**No. 27723.**

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1970.

Rehearing Denied and Rehearing En Banc Denied April 2, 1970.

12. Pub.L. 90–606, 82 Stat. 1188, October 18, 1968.

**26**

Robert B. Zaboroski, El Paso, Tex., court-appointed, for appellant.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Romualdo Cesar Caballero, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This is an appeal from a jury conviction of interstate transportation of a motor vehicle with knowledge that the vehicle had been stolen. Dyer Act, 18 U.S.C. sec. 2312. Seven assignments of error are pursued; finding them to be without merit, we affirm.

On January 14, 1967, appellant Mancuso purchased a 1959 Chevrolet in Los Angeles, California, from Nathan Falk.[1] Mancuso gave Falk a check drawn on a Far Rockaway, New York bank in the amount of $400. The check was postdated to January 31, 1967. Shortly after receiving the check, Falk requested Mancuso to provide him with a new check dated closer in time. Mancuso replied that a new check dated January 21 and drawn on the Bank of America would be furnished. Several days later a friend of Mancuso's delivered a check drawn on the Bank of America to Falk, but it was also postdated to January 31. Falk accepted the new check, however, and returned the Far Rockaway check. On the following day he went to the Bank of America to determine whether there were sufficient funds to cover the check. He was informed that there were not.

Falk unsuccessfully searched for Mancuso and later reported the car stolen.

Evidence was introduced that an account with the Bank of America was opened for Mancuso on January 17, 1967, with one deposit of $5 recorded. Three checks totaling $22.71 were written on the account; no further deposits were made and the account was closed on January 30, 1967. The Bank of America record contained a signature verification which was sent to the Bank of Manhattan of Far Rockaway which had been returned marked: "We have no record of any account under this name."

On February 23, 1967, Mancuso flagged down a bus 41 miles west of Pecos, Texas. He told the driver that he was ill and that he had just been released from a hospital in El Paso after treatment for a heart condition. Mancuso left the 1959 Chevrolet on the side of the highway and was taken to a hospital in Pecos. A doctor there found no evidence of heart disease and therefore dismissed him. While in the hospital, Mancuso requested that his car be picked up and serviced, for which he attempted to pay by check. The car was examined, and a telephone inquiry to Falk in Los Angeles disclosed that the car was stolen. Mancuso was arrested.

The appellant took the stand and stated that he was Charles Philip Catalano, not Charles Joseph Mancuso, and that he was a doctor. Mancuso at first stated that he did not remember anything during 1967, at least he did not remember anything that "he should want to forget." He did remember buying the automobile in question from Falk and giving Falk a New York check for the car, but denied knowledge of the Bank of America check and even denied having an account with Bank of America. This testimony was refuted, however, by an F.B.I. handwriting expert who testified that the Bank of America check was signed by Mancuso. Appellant also

---

1. The car was owned by Stewart Falk, but he transferred it to his father in December of 1966. It was advertised for sale at Stewart Falk's request.

remembered that Falk had requested another check but that instead he borrowed $400 in cash from his "Chief of Staff" at the hospital and told a friend named Jerry Bean to give the money to Falk. Later, Mancuso remembered that Bean returned the torn New York check. Mancuso said he planned a trip East and that he had reached El Paso when he became ill. When he was asked who had driven the car, appellant responded that he had never driven and that he had been kidnapped in Los Angeles from the Cork Hotel and that he had been "conked" on the head continuously. Appellant remembered being ill and having gone to the hospital in Pecos and he also remembered an appearance before the Commissioner in March 1967.

## I.

The appellant first contends that the trial court erred in admitting into evidence the notation from the Bank of America records that the Far Rockaway bank had no account in Mancuso's name. The appellant contends that this evidence was hearsay and its admission violated his right to confrontation of witnesses guaranteed under the Sixth Amendment. The contention is without merit.

■ The Federal Business Records Act, 28 U.S.C. sec. 1732 [2] provides an exception to the rule against the admission of hearsay evidence when it is shown that the document sought to be admitted was prepared in the regular course of business.[3] The record discloses that the vice-president and manager of the Bank of America branch testified that the records were made at or near the time of the transactions they reflect, and that they were kept in the regular course of business. This testimony was adequate to lay a proper foundation for admitting the records and to bring them within the 1732 exception.

## II.

■ A more substantial issue is Mancuso's contention that the trial court should have instructed a verdict of acquittal because the government failed to prove that a violation of the Dyer Act had been committed. In reviewing the judge's alleged error in this respect, we are mindful that his determination is reversible only under the plain error rule to avoid a clear miscarriage of justice or to correct the deprivation of a substantial right.[4]

The issue is whether the government proved that the car was stolen and that Mancuso had the requisite guilty knowledge under the Dyer Act concerning the theft of the car. Mancuso argues that the consideration bargained for by Falk was the check on the Far Rockaway bank, and that Falk would have had only a contractual right to demand return of the automobile or new consideration if the check had not been honored on January 31, 1967. He maintains that the exchange of the Far Rockaway bank check

2. "Sec. 1732. Record made in regular course of business; photographic copies. (a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. * * *"

3. United States v. Shiver, 5th Cir. 1969, 414 F.2d 461; United States v. Hickey, 7th Cir. 1966, 360 F.2d 127; Phillips v. United States, 9th Cir. 1965, 356 F.2d 297.

4. Since Mancuso did not move for judgment of acquittal, our review is limited by Fed.R.Crim.P. 30 and 52(b). Palos v. United States, 5th Cir. 1969, 416 F.2d 438; United States v. Urbana, 5th Cir. 1969, 412 F.2d 1081; Mims v. United States, 5th Cir. 1967, 375 F.2d 135; Fitzpatrick v. United States, 5th Cir. 1969, 410 F.2d 513.

for the Bank of America check was a separate transaction which could not constitute a violation of the Dyer Act.

■ In instructing the jury on the elements which must be proved to warrant a Dyer Act conviction, the district judge said:

"* * * Under this particular statute, which is called the Dyer Act or Stolen Motor Vehicle Act, a motor vehicle is stolen whenever it is acquired or is thereafter possessed as a result of some wrongful or dishonest act whereby another person willfully obtains possession of such property without permission with the intent to deprive."

This instruction is clearly in line with the definition of "stolen" given by the Supreme Court in United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957):

"'Stolen' as used in 18 U.S.C. § 2312, 18 U.S.C.A. § 2312, includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny."

352 U.S. at 417, 77 S.Ct. at 402.[5]

■ Although one may lawfully obtain possession of a vehicle, if all the circumstances surrounding its acquisition indicate that the defendant had the intent to retain unlawful possession, a jury may properly conclude that he had the requisite intent to steal the car.[6]

In Dennison v. United States, 5th Cir. 1967, 385 F.2d 905, the defendant had made a down-payment on an automobile with a check drawn on a bank in which he had no account. In affirming his conviction, this court noted:

"Since the Turley (352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430) definition, convictions have been affirmed where possession of a vehicle was obtained by means of a check drawn on a nonexistent business and on a bank where defendants had no account, Scott v. United States, 4 Cir., 1958, 255 F.2d 18; and where possession was obtained by a check drawn on an account with insufficient funds. Landwehr v. United States, 8 Cir. 1962, 304 F.2d 217. Both of these cases turned on the defendants having obtained the automobiles by false pretenses. In neither case were the automobiles sold. It is true that Turley speaks in terms of purchasing an automobile with a worthless check, thereafter transporting it in interstate commerce with a subsequent sale but we hold that a sale is not an essential element of the crime. The question is whether appellant obtained the automobile by false pretenses with the criminal intent to deprive the rightful owner of the rights and benefits of ownership and thereafter transported it in interstate commerce. Cf. United States v. Oates, 4 Cir., 1963, 314 F.2d 593. Here appellant obtained the vehicle by false pretenses and it was transported in interstate commerce."

Id. at 906–907.

■ Viewing the record in this case as a whole, we find sufficient evidence upon which the jury concluded that Mancuso intended to steal the car. That the district judge did not instruct a verdict of acquittal was therefore without error.

### III.

The appellant's next two contentions are interrelated: (a) that the trial judge failed to instruct the jury on the defense of insanity, and (b) that appellant was denied effective assistance of counsel because his attorney never raised the issue of insanity at his trial. Both contentions are without merit.

---

5. See also Mayzak v. United States, 5th Cir. 1968, 402 F.2d 152; Webb v. United States, 5th Cir., 1966, 369 F.2d 530; Riley v. United States, 5th Cir. 1966, 359 F.2d 850.

6. United States v. Ryan, 5th Cir. 1969, 415 F.2d 847; Johnson v. United States, 10th Cir. 1967, 384 F.2d 388.

Mancuso had been given thorough medical examinations and had been found to be mentally competent. In light of the psychiatric reports, and because defense counsel never injected insanity into the trial, the trial judge understandably did not raise it in his instructions. Nor was timely objection to the court's charge made. Failure to do so prior to the return of the verdict constitutes waiver of the objection. Fed.R. Crim.P. 30.[7] The appellant's attempt to inject a psychiatric report and the testimony that he called himself a brain surgeon do not rise to sufficient conflicting evidence for us to conclude that it was plain error for the trial judge to fail to instruct on insanity.

The foregoing conclusion would be nullified, however, should we determine that Mancuso was denied the effective assistance of counsel. We do not. We note the general rule that "relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation." Williams v. Beto, 5th Cir. 1965, 354 F.2d 698, 704, and cases there cited. The appellant's representation was superior. That counsel did not request the instruction on insanity was fully understandable; Mancuso had been found to be competent and the letter which Mancuso wished to be admitted would not have been helpful. Moreover, Mancuso took the stand and damaged his own case, against his attorney's advice.

## IV.

The appellant's last three assignments of error refer to alleged defects in the court's instructions: (a) the instruction on the elements of a Dyer Act offense constituted a partial instructed verdict of guilty; (b) in instructing the jury on the necessary felonious intent, the court failed to specify to which of the two checks involved he was referring; and (c) the cumulative effect of certain instructions amounted to plain error.

(a) Mancuso maintains that the district court precluded the defense of lack of transportation in its charge, and thus instructed a partial verdict of guilty. That court charged that:

"It is the act of transporting that is in question. There is no dispute that it was transported from California to Texas but it must have been done willfully and with knowledge that the motor vehicle had been stolen."

Since the appellant testified that he had been in the car from California to Texas, the jury had only to determine whether he had knowingly and willfully participated in the transportation with the intent to deprive the owner of the car. The district court's instruction on these issues was proper.

(b) Appellant attacks that portion of the charge in which the judge referred to "this check", not specifying whether he referred to the check drawn on the Far Rockaway bank or the Bank of America. The instruction was not plain error under Fed.R.Crim.P. 52(b). In light of our discussion of the term "stolen" in Part II, supra, the crucial issue was whether Mancuso gave either check with the intent to deprive Falk of ownership of the car.

(c) Appellant lastly contends that the cumulative effect of certain errors and omissions constituted plain error under Rule 52(b). The two alleged erroneous instructions are: (1) "You consider anything you think is helpful to you in arriving at a fair verdict in this case." and (2) "If you believe that he did not intend to deprive him of the car

7. Spriggs v. United States, D.C.Cir. 1969, 408 F.2d 1279; Clark v. United States, 5th Cir. 1968, 405 F.2d 166; White v. United States, 9th Cir. 1968, 394 F.2d 49.

and intended to pay for it and that he was acting in good faith you should acquit him." Both instructions, upon consideration of the entire charge, do not amount to plain error. See Kyle v. United States, 5th Cir. 1969, 402 F.2d 443, 445.

While appellant was testifying, his counsel asked if appellant had a prior criminal record. Appellant replied that he could not remember. On cross-examination, the government attorney questioned appellant specifically about nine prior offenses for which appellant had been convicted. All offenses related to either forgery or false pretense. Appellant denied conviction of all nine offenses.

The trial court instructed the jury: "Several acts have been referred to here and the only materiality of any of them would be on whether or not there is— that it would tend to show the intent of this man in the particular transaction." Mancuso contends that (1) if the phrase "several acts" referred to prior criminal acts, the instruction was erroneous; and (2) in any event, the court erred in failing to instruct the jury that evidence of prior convictions went only to the issue of appellant's credibility.

 Appellant took the stand in his own defense and therefore could be cross-examined concerning prior convictions. Reese v. United States, 5th Cir. 1965, 353 F.2d 732, 734. See Matthews v. United States, 5th Cir. 1969, 407 F.2d 1371, 1381. Prior crimes are admissible on the issue of intent to commit the crime in question. United States v. Restrepo, 417 F.2d 927 (5th Cir., Nov. 3, 1969) (No. 26494); Matthews v. United States, supra. For evidence of prior crimes to be admissible, however, intent must be a critical ingredient of the offense charged, Hamilton v. United States, 5th Cir. 1969, 409 F.2d 928, 930, and the prior offense must be both similar to the one under inquiry and not too remote in point of time. Matthews v. United States, supra 407 F.2d at 1381;

Hamilton v. United States, supra 409 F. 2d at 930.

 In this case, the trial court gave a limiting instruction as to the relevancy of this evidence; intent was a critical ingredient of the offense charged; and the nature of the prior offenses (involving forgery and false pretenses) was similar to the offense in question as to the question of intent (a felonious taking with intent to deprive). The evidence in question concerned prior convictions from 1945 to 1956. Whether or not these prior offenses were too remote was within the discretion of the district court judge. Sutton v. United States, 5th Cir. 1968, 391 F.2d 592, 593 (prior offense several days previous); Goddard v. United States, 5th Cir. 1942, 131 F.2d 220, 221 (prior offense twelve years previous). The district court judge did not abuse his discretion in admitting this testimony and properly instructed the jury as to its limited use. Sutton v. United States, supra.

As to appellant's contention that the court erred in failing to instruct the jury that the prior conviction evidence could be used only on the issue of appellant's credibility, the district court gave a limiting instruction that the evidence was relevant only as to intent. Use of the evidence for other purposes (including impeachment purposes) was precluded in this instruction.

We find that the appellant was fairly tried and properly convicted.

Affirmed.

RIVES, Circuit Judge (specially concurring):

The majority finds that Mancuso was not denied effective assistance of counsel, relying on the standard enunciated in Williams v. Beto, 5th Cir. 1965, 354 F.2d 698, 704. I think that a stricter standard should be required. See Daugherty v. Beto, 5th Cir. 1967, 388 F.2d 810, 814–18 (dissenting opinion). However, in this case, under any reasonable standard, I agree that Mancuso was

not denied effective assistance of counsel. I concur in the result, and in the opinion except for its reliance on the Williams v. Beto standard.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

RIVES, Circuit Judge:

I concur in the denial of the petition for rehearing by the panel.