**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Eugene ZEPIN,
Defendant-Appellant.**

**No. 75–4431
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

June 11, 1976.

\* Rule 18, 5th Cir. See *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.,* 5th Cir. 1970, 431 F.2d 409, Part I.

Theodore J. Sakowitz, Federal Public Defender (Court-appointed not under ACT), Michael J. Rosen, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Peter Koste, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GEWIN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

Michael Zepin appeals from his conviction for transporting a stolen motor vehicle in interstate commerce in violation of the Dyer Act, 18 U.S.C. § 2312. We affirm.

In September of 1973 Zepin purchased a Buick automobile in Fort Lauderdale, Florida, financing it with a loan from the Fort Lauderdale National Bank. He made monthly payments to the bank from October 1973 until June 1974. After that time, despite numerous requests from the bank's collection manager, Zepin made no further payments. Finally, on October 3, 1974 the bank repossessed the car without a court order, but in a peaceful and orderly fashion, as provided in the retail installment contract. The bank sent notice of the repossession by certified mail; the defendant's wife received and signed for the letter at his residence. Shortly thereafter, Zepin went to the bank and signed a receipt for the personal belongings left in the automobile; at that time he voiced no protest regarding the repossession. The bank secured repossession title to the car on December 6, 1974, but the defendant was not notified of this transfer of title. On December 17, 1974, Zepin removed the Buick from the bank lot without the bank's permission; it was recovered a few days later. He again took the vehicle from the bank's possession with-

out its permission on December 25, 1974, and drove it from Florida to Chicago. There, he traded it for a Chevrolet van, representing to the dealer that he had free and clear title.

Zepin's defense was that he believed that he was the lawful owner of the car and that the bank had wrongfully deprived him of it. He asserted his ownership interest in the allegedly stolen Buick based on, *inter alia*, the following: (1) he made a number of payments on the car before default; (2) the certificate of title listed him as owner and the bank as lienholder, and he was never informed of the bank's subsequent acquisition of repossession title; and (3) the bank did not have a court order to repossess the car. Therefore, he argued, he could not have had the requisite intent under the Act; i. e., he did not transport the vehicle "knowing the same to have been stolen." 18 U.S.C. § 2312.

The viability of Zepin's defense necessarily depended in part upon the definition of the term "stolen" as used in the statute.[1] His position in the trial court and in this court is that the government was required to prove an intent to deprive the *owner* of his rights of *ownership*. The trial court rejected this theory and instructed the jury that "stolen" as used in section 2312 "means any wrongful or dishonest taking of property owned by or in the lawful possession of another party, without or beyond any permission having been given, where such property is taken with the intent to deprive the owner or party in lawful possession thereof, of the right of ownership or lawful right of possession." The court also charged that it was not necessary that the bank actually have legal title to the automobile if at the time of the taking it was in the lawful possession of the bank, and was taken without the bank's knowledge or consent and with the intent to deprive the bank of its rights of *ownership or posses-*

1. Also of crucial importance, of course, was whether the jury believed that Zepin's state of mind when he took the car to Chicago was as he claimed. His asserted belief that he owned the car and that the bank had wrongfully re-

possessed it was perhaps undermined by his testimony on cross-examination that he had been an automobile salesman for six years and an assistant finance manager for automobile dealers for over two of those years.

*sion.*[2] Zepin asserts that the court's instructions were erroneous and improperly deprived him of the full benefit of his defense.

■ It has long been settled that the word "stolen" as used in section 2312 is not limited to takings that constitute common-law larceny. *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). Appellant focuses on the *Turley* Court's definition of "stolen" as "all felonious takings . . . with intent to deprive the *owner* of the rights and benefits of *ownership* . . . ." *Id.* at 417, 77 S.Ct. at 402, 1 L.Ed.2d at 436 (emphasis added). Essentially his position is that one cannot be convicted under the statute for intentional deprivation of possessory rights. According to appellant's view of the proper instruction on the meaning of "stolen," the jury would be limited to a determination of whether Zepin believed that he, rather than the bank, was the lawful owner of the Buick; the question whether Zepin recognized and intentionally interfered with the bank's right to possession would be irrelevant.

■ Such a strained and restrictive construction is unwarranted in view of the broad sweep that the courts have accorded the Act in order to effectuate the recognized congressional intent to provide comprehensive federal protection against all possible "loopholes for wholesale evasion." *United States v. Turley, supra* at 417, 77 S.Ct. at 402, 1 L.Ed.2d at 436. *E. g., United States v. Mancuso*, 423 F.2d 23 (5th Cir.), *cert. denied*, 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970); *Mayzak v. United States*, 402 F.2d 152 (5th Cir. 1968); *Dennison v. United States*, 385 F.2d 905 (5th Cir. 1967); *Webb v. United States*, 369 F.2d 530

(5th Cir. 1966); *United States v. Bunch*, 399 F.Supp. 1156 (D.Md.1975). Our recent decision in *United States v. Hull*, 437 F.2d 1 (5th Cir. 1971), is closely in point. There, the defendant contended that he was entitled to judgment of acquittal because the government had failed to prove the ownership of the vehicle in question, which, he asserted, was an essential element for a Dyer Act conviction. Rejecting that contention, the court stated:

> Since *United States v. Turley* it has been settled that the Dyer Act was never intended to incorporate or to depend upon technical property concepts. Instead it was broadly intended to deal with knowing interstate transportation following any unlawful taking; *it proscribes felonious interference with legal possession.*

*Id.* at 5 (emphasis added; footnotes omitted); *see Girton v. United States*, 383 F.2d 404 (9th Cir. 1967).

■ In *Webb v. United States, supra*, we were presented with a similar challenge to jury instructions where the defendant had claimed an ownership interest in the allegedly stolen vehicle. We approved the district court's charge, which included an instruction that Webb must be acquitted if he "believed that he owned some interest in the automobile in question and also believed that he had the right to possession of the motor vehicle at the time and place of the alleged offense." 369 F.2d at 534. The district court's instruction in the instant case is entirely consistent with that approved in *Webb*. Appellant attempts to distinguish *Webb* by pointing out that the *Webb* instruction employed the conjunctive term "and" in reference to ownership and possession, whereas the lower court here

**2.** The above-paraphrased portion of the court's instructions reads in full as follows:

> If you find that the defendant did not know that this automobile was stolen, it would be your duty to return a verdict of not guilty. However, in this connection, the Court instructs you that it is not necessary for the title of the automobile to have been actually transferred to the bank in order for the car to have been stolen. It is sufficient to establish that the car was stolen if it is proved beyond a reasonable doubt that the automobile was

taken from the bank at the time when the automobile was in the lawful possession of the bank and if it is likewise proved that the automobile was taken without the knowledge and consent and against the wishes of the bank, and if it is likewise established that the automobile was taken by a person who then and there had the specific intent to deprive the bank of its ownership rights in the automobile or of its lawful right of possession thereof.

utilized the disjunctive "or." This convoluted exercise in semantics is unavailing, however, because it ignores the context in which the terms appear. The *Webb* charge required *acquittal* if the defendant believed he had both an ownership interest and a right to possession. The instant charge required *conviction* if Zepin intentionally deprived either the lawful owner or the party in lawful possession of his legal rights in the vehicle. Therefore, under either instruction, a defendant's belief in his own ownership interest is an insufficient defense in itself to the intentional and wrongful deprivation of another's lawful right of possession; knowing interference with legal possession meets the Dyer Act's requirement that a defendant transport the vehicle "knowing the same to have been stolen." The court clearly and accurately instructed the jury concerning this element of the offense, and there was ample evidence from which the jury could conclude that the defendant was guilty of the violation charged.

The judgment is AFFIRMED.