**UNITED STATES of America**

**v.**

**Joseph F. X. McNALLY, a/k/a "Pope" McNally.**

**Crim. No. 70-176.**

United States District Court,
E. D. Pennsylvania.

Feb. 1, 1972.

Wm. Hyatt, Trial Atty. Dept. of Justice, Washington, D. C., for plaintiff.

Meyer Bushman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

On April 2, 1970, defendant was indicted on a bill containing seven counts: four counts for failure to file income tax returns in the years 1963 through 1966 in violation of 26 U.S.C. § 7203 and three counts for filing false and fraudulent returns in the years 1963 through 1965 in violation of 26 U.S.C. § 7206(1). The primary basis of this indictment was evidence seized at 3039 Belgrade Street on July 26, 1967, which defendant argues should be suppressed on several grounds. Before the Court are defendant's motions: (1) to quash the search warrants and suppress the evidence seized at 3039 Belgrade Street; (2) to quash the indictment; and (3) for a bill of particulars. Our considerations of these motions has been delayed by the loss of certain information from the Government's file, the reconstruction of

which was both essential and time-consuming.

## I. *Defendant's Motion to Quash the Search Warrants and Suppress the Evidence*

Defendant's motion to quash the search warrants and suppress the evidence is based on three separate and distinct grounds: (1) Initially, the defendant contends that the seizure of the evidence was the direct and proximate result of his proper assertion of his Fifth Amendment privilege under Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); (2) Secondly, defendant contends that the search warrants were issued as a means of seizing mere evidence which is testimonial or communicative in nature; (3) Finally, defendant contends that the affidavit, under which the search warrant was issued, did not state sufficient facts to establish probable cause under the standards set by the Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We will treat each contention seriatim.

### A.

On May 24, 1967, the intelligence agents of the Internal Revenue Service initiated an investigation of an alleged large scale wagering operation in Philadelphia. The investigation, involving the defendant, among others, was initiated primarily because of information obtained from two undisclosed confidential sources. As a result of the investigation, on July 26, 1967, arrest and search warrants were issued pursuant to the affidavit of IRS Agent, McCauley. A raid was thereafter conducted at 3039 Belgrade Street, Philadelphia, wherein certain gambling paraphernalia was seized and defendant was arrested.

The issuance of the warrants was based upon allegations in the affidavit that defendant was engaged in wagering operations in violation of 26 U.S.C. §§ 4411, 4412 and 7203 and 18 U.S.C. § 371. Thereafter, the Supreme Court decided Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), wherein the Court held that a defendant's assertion of his Fifth Amendment privilege against self-incrimination bars a prosecution for violation of 26 U.S.C. §§ 4411 and 4412 of the federal wagering tax statutes. On the basis of *Marchetti* and *Grosso*, the Government dismissed all charges against defendant. As previously stated, defendant has been reindicted for income tax violations under 26 U.S.C. §§ 7203 and 7206(1), based upon the evidence seized at 3039 Belgrade Street.

Defendant argues that the seizure of the evidence was the direct and proximate result of his proper assertion of his Fifth Amendment privilege against self-incrimination and should be suppressed. Defendant, in so arguing, is asking this Court to conclude that *Marchetti* and *Grosso* should be retroactively applied to bar the introduction in a prosecution for income tax violations of evidence obtained in a pre-*Marchetti-Grosso* search based on probable cause to believe a violation of the wagering tax statutes had occurred. We find this contention to be without merit on two grounds.

In the first place, *Marchetti* and *Grosso* did not invalidate the wagering tax statutes, nor did they abolish the criminal offenses specified therein, nor do they say an indictment or information will not lie. In a carefully circumscribed holding, the Supreme Court concluded that a defendant may not be convicted of a criminal violation of the wagering tax statutes if he has properly asserted his constitutional privilege against self-incrimination. Prior to the *Marchetti-Grosso*, decisions, the Supreme Court had twice held that the wagering tax provision of the Internal Revenue Code did not constitute a denial of the Fifth Amendment privilege against self-

incrimination. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955); United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953). Thus, at the time the search warrants in the instant case were issued, they were based on probable cause that a violation of the wagering tax statutes had occurred. At that time, these statutes had twice been held constitutional and have not subsequently been held invalid. Therefore, assuming probable cause was shown, the warrants were clearly valid at the time of their issuance, and it is clearly established that evidence seized pursuant to a valid search warrant may be used against a party on trial for a different offense. United States v. Hanon, 428 F.2d 101, 104 (8th Cir. 1970), (en banc), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971). For this reason, we conclude that the evidence seized at 3039 Belgrade Street would be admissible against defendant in a prosecution for income tax violations.

Secondly, although the Supreme Court has not ruled on the precise issue before this Court, it has held that the *Marchetti-Grosso* doctrine was to be applied retroactively in some cases, United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (forfeiture proceedings brought against one who had been convicted of wagering tax statutes), and prospectively in others, Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (upholding use of wagering tax returns in pre-*Marchetti-Grosso* prosecutions for income tax evasion.) However, the precise issue presented to this Court has been decided by the Courts of Appeals of the Fourth, Fifth, Sixth and Eighth Circuits, each holding that *Marchetti* and *Grosso* have no retroactive application in circumstances similar to those of the instant case. United States v. Scaglione, 446 F. 2d 182 (5th Cir. 1971); United States v. Hanon, 428 F.2d 101 (8th Cir. 1970) (en banc) cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971); Di-

Piazza v. United States, 415 F.2d 99 (6th Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); Kuhn v. United States, 415 U.S. 111 (6th Cir. 1969); Washington v. United States, 402 F.2d 3 (4th Cir. 1968), cert. denied, 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145 (1971). This issue was raised but not decided by the Third Circuit in United ed States v. Boiardo, 408 F.2d 112, 115 (3rd Cir. 1969). We conclude that *Marchetti* and *Grosso* are not to be given retroactive application as to bar the introduction in an income tax evasion case of evidence obtained in a pre-*Marchetti-Grosso* search based on probable cause to believe a violation of the wagering tax statutes had occurred.

### B.

On July 26, 1967, a warrant was issued for the search of the home of defendant's mother at 3039 Belgrade Street, Philadelphia. There the IRS agent seized betting tabs, settlement sheets, bottom sheets and various other gambling paraphernalia. Defendant now argues that these seized documents constitute "mere evidence" which are testimonial or communicative in nature and, therefore, should be suppressed.

In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) and Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), the Supreme Court held that private papers, seized as "mere evidence" of a crime could not be used against defendant. The Court, however, reconsidered the "mere evidence" rule in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, at page 301–302, 87 S.Ct. 1642, at page 1647, 18 L.Ed.2d 782 (1967) and ultimately held:

"Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of the crime, or contraband. * * * Indeed, the distinction is wholly irrational, since, depending on the circumstances, the same 'papers and effects' may be 'mere

evidence' in one case and 'instrumentality' in another."

The Court requires only that a nexus be shown between the item to be seized and criminal behavior—such nexus being automatically provided in the case of fruits, instrumentalities or contraband, 387 U.S. at 307, 87 S.Ct. 1642.

■■ Defendant does not argue that Warden v. Hayden is inapplicable, but contends that the personal papers and documents seized constitute evidence that is testimonial or communicative. The personal papers and documents to which defendant refers are the records of defendant's wagering operations from 1961 through 1967. It is well established that documents recording past gambling transactions and similar paraphernalia constitute instrumentalities of the crime. United States v. Hanon, 428 F.2d 101, 106–107 (8th Cir. 1970) (en banc), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971). See also Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); United States v. Markis, 352 F.2d 860, 864–865 (2d Cir. 1965), remanded on other grounds, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967); Marderosian v. United States, 337 F.2d 759, 760 (1st Cir. 1964), cert. denied, 380 U.S. 971, 85 S.Ct. 1328, 14 L.Ed.2d 268 (1965). We conclude that the records and gambling paraphernalia seized at 3039 Belgrade Street constitute instrumentalities of the crime and, therefore, will not be suppressed.

### C.

■■ Defendant argues that the facts alleged in the affidavit of Special Agent McCauley were insufficient to establish probable cause for the issuance of the search warrants under standards set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In reviewing a magistrate's determination of probable cause, we must consider the following guidelines as summarized by the Supreme Court in Spinelli v. United States, supra, at p. 419, 89 S.Ct. at pp. 590, 591:

"[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96, [85 S.Ct. 223, 13 L.Ed.2d 142] (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311, [87 S.Ct. 1056, 18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108 [85 S.Ct. 741, 13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270–271, [80 S.Ct. 725, 4 L.Ed.2d 697] (1960)."

With these standards in mind, we will undertake to review the affidavit in the instant case in order to determine whether there was a sufficient basis for the magistrate's finding of probable cause.

On July 26, 1967, Special Agent McCauley submitted a lengthy affidavit to the United States magistrate to obtain search warrant of homes and automobiles in connection with their investigation of wagering operations in Philadelphia. Briefly summarized, the affidavit avers the following facts in relation to defendant:

1. Confidential information was received from two confidential sources proven reliable in the past that a large scale wagering operation was being conducted in Philadelphia. The "banker" of this operation was alleged to be defendant, Joseph "Pope" McNally, and the "Lieutenant" was alleged to be John "Pickles" Millevoi.

2. Defendant was arrested fifteen times on gambling charges, which resulted in six convictions.

3. A detailed description of the alleged manner in which defendant conducted his wagering operation was provided.

4. Special Agents placed bets in local taverns.

5. Defendant was seen in the 2400 Bar five times and at Mahoney's Bar once over a two-month period.

6. Agents overheard several conversations involving the defendant who was referred to as the "Pope".

7. Defendant was observed driving in a surreptitious manner on several occasions.

8. Defendant was observed carrying a brown paper bag on two occasions.

9. Defendant visited his mother's home at 3039 Belgrade Street on ten occasions in a two-month period.

In *Aguilar*, the Supreme Court, in discussing the standards which must be met to establish probable cause for the issuance of a search warrant, held, 378 U.S. at page 114, 84 S.Ct. at page 1514:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and *some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States,* 376 U.S. 528, [84 S.Ct. 825, 11 L.Ed.2d 887] *was 'credible' or his information 'reliable'."*

In the instant case, the affidavit is totally devoid of any circumstances from which the magistrate could infer that the informant "was credible or his information reliable". The affidavit states merely that:

"Confidential information was received from two confidential sources, proven reliable in the past, that a large scale wagering operation was being conducted \* \* \* ".

We, therefore, conclude that on the basis of the informant's tip alone, the affidavit does not provide a sufficient basis for a finding of probable cause.

Notwithstanding the fact that the informant's tip is inadequate under the *Aguilar* standards, probable cause for the issuance of a search warrant may be established where there is a "substantial basis" for crediting the hearsay. United States v. Harris, 403 U.S. 573, 581, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In the instant case, in addition to the informant's tip, the affidavit contains the following facts: defendant had been arrested fifteen times on gambling charges, which resulted in six convictions; a detailed description of the alleged manner in which defendant conducted his wagering operation; and the corroborating information obtained from the independent investigation of the IRS agents.

In Spinelli v. United States, *supra,* 393 U.S. at 414, 89 S.Ct. 584, the Supreme Court held that no weight was to be given to the "bald and unilluminating" assertion that the suspect was known to the affiant as a gambler. Recently, in United States v. Harris, *supra,* 403 U.S. at 582–583, 91 S.Ct. at 2082, the Court retreated from its prior holding in *Spinelli* to the extent that *Spinelli* was not to be applied to "preclude a magistrate from relying on a *law enforcement officer's knowledge of a suspect's reputation."* In the instant case, the affidavit discloses that defendant has been arrested fifteen times and convicted six times on gambling charges. Defendant's record of prior arrests and convictions do not properly suggest continued criminal conduct on his part. They may properly lead to a suspicion of continued criminal conduct and a belief in that suspicion, but this has been held insufficient. Nathanson v. United States, 290 U.S. 41, 46, 54 S.Ct. 11, 78 L.Ed. 159 (1933). To hold otherwise is to suggest that a conviction with its

attendant penalties leads only to continued criminal conduct of the same kind. It is quite unlike direct information of *recent* purchases of narcotics, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *recent* purchases of illegal liquor, United States v. Harris, *supra*, and similar evidence of *recent* criminal conduct the continuation of which may be reasonably assumed. We conclude that prior arrests and convictions cannot be considered tantamount to a "law enforcement officer's knowledge of a suspect's reputation." Therefore, defendant's prior criminal record is entitled to little weight.

■ In Spinelli v. United States, *supra*, the Supreme Court held 393 U.S. at p. 416, 89 S.Ct. at p. 589:

> "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe[d] the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

*See e. g.*, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In this case, the affidavit contains a detailed description of the manner in which defendant's alleged operation was being conducted. Defendant argues that this description is a "boiler plate" recital of the manner in which any lottery operation is conducted in the United States. The Government concedes that this description is general in part, but argues there are several references to this specific operation. The source of this information, however, has not been disclosed, and we are unable to determine whether its source lies with the informers, whose reliability has not been shown, or with the agents, who were surveilling the local taverns. At any rate, it is undisputed that a wagering operation was being conducted. However, no nexus has been shown connecting the defendant with the operation

in question other than unsubstantiated rumor. We, therefore, cannot attach significant weight to this description.

■ Probable cause may be established, where the *Aguilar* standard is not met, by corroboration of the information contained in the informant's tip. In Spinelli v. United States, *supra*, the Supreme Court stated, 393 U.S. at p. 415, 89 S.Ct. at p. 588, 21 L.Ed.2d 637:

> "If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered: * * * [The magistrate] must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?"

We must now focus our attention on the information obtained from the independent investigation of the IRS agents. First, agents placed bets in bars which were allegedly part of defendant's wagering operation. However, no connection between the placing of the bets and defendant has been shown other than that defendant was referred to in several conversations. These observations clearly do not establish with any probability that defendant was involved in any way with the wagering activities. Secondly, defendant was observed driving in a surreptitious manner on several occasions, carrying a brown paper bag on several occasions, and visiting his mother on several occasions. Similarly, no criminal activity is shown by this conduct nor is any connection shown between these activities and defendant's alleged capacity as the "banker" of the wagering operation. Furthermore, it was not alleged that at any time during the course of the investigation that defendant was ever seen placing a bet, making a payoff or doing anything having any connection with a lottery operation. In summary, we can give little weight to the corroborating information revealed in the independent investigation of the IRS agents,

in that no nexus exists between the activities of the defendant and any criminal conduct on his behalf.

Defendant argues that no single incident, by itself, would establish probable cause. The Government, on the other hand, argues based on the information received from the informants, the detailed description of the wagering operation, the observation of the agents in the bars, the surveillance of defendant's activities, and the criminal record of the defendant as viewed in their "totality" clearly establish probable cause. As to both propositions we agree. We have determined, however, that the confidential information received is entitled to little weight in that it fails to meet the *Aguilar* test. Similarly, we have determined that the detailed description is entitled to little weight in that the reliability of its source has not been demonstrated. Finally, we have determined that the allegations of the surveillance and investigation of defendant contain no suggestion of criminal conduct "when taken by themselves". Spinelli v. United States, *supra*, 393 U.S. at 418, 89 S.Ct. 584.

The Government urges both in its brief and in oral argument that we must view these facts "in their totality". In Spinelli v. United States, *supra*, at p. 415, 89 S.Ct. 584, however, the Supreme Court itself rejected this identical approach. We are not unaware of the vigorous dissent in *Spinelli* nor are we insensitive to the burden on law enforcement officers especially where, as here, the accused is in such a position that he is unlikely to be observed actually engaging in criminal activity. We are bound by the decision in *Spinelli* and must reject the "totality of circumstances" approach. We, therefore, conclude that the affidavit did not provide a sufficient basis for a finding of probable cause. In so concluding we are not unaware of the attack upon *Aguilar* and *Spinelli* in the recent case of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), which was neither cited nor relied upon by either the Government or the defendant. The holding of *Harris* has not persuaded us to change our decision since the touchstone of *Harris*—personal observation of defendant actually engaging in criminal activity—is totally absent in the instant case. In *Harris*, the majority had the opportunity, as suggested by at least one concurring justice, to overrule *Aguilar* and *Spinelli* and "wipe their holdings from the books". 403 U.S. at 585, 91 S.Ct. at 2083 (Black, J., concurring), but the Court did not do so. Although *Harris* limited *Spinelli* as to the proper consideration to be given to the personal knowledge of the affiant or arresting officer as to the defendant's reputation, 403 U.S. at 582–583, 91 S.Ct. at 2075, this question was not involved in the instant case. Thus, *Aguilar* and *Spinelli* remain the law of the land, and so long as they do, pre-*Spinelli* affidavits, such as that here involved, will fall victim to the somewhat unrealistic standards enunciated therein. Reluctantly, we will grant defendant's motion to quash the search warrant and to suppress the evidence.

## II. Defendant's Motion to Quash the Indictment

Defendant argues that the indictment be quashed on the ground it is inconsistent. Counts I, II, III and IV charge defendant with failure to file income tax returns at the times required by law from 1963 through 1966. Counts V, VI and VII charge defendant with filing false and fraudulent returns in the years 1963 through 1965. These latter charges arise from the delinquent returns filed by defendant. Therefore, although the years are identical, the offenses are separate and the indictment is in no way inconsistent. Accordingly, defendant's motion to quash the indictment will be denied.

## III. Defendant's Motion for a Bill of Particulars

The Government has objected to particulars 14(f), seeking the language used by the defendant which indicated that he intended to commit the

crimes charged, and 14(g) seeking the names and addresses of those qualified to testify against defendant. We will deny particular 14(f) in that this is a request for pure evidence. Wong Tai v. United States, 273 U.S. 77, 82, 47 S. Ct. 300, 71 L.Ed. 545 (1926). Defendant's request for particular 14(g) will likewise be denied. United States v. Glass, 421 F.2d 832 (9th Cir. 1969); United States v. Chase, 372 F.2d 453 (4th Cir. 1967), cert. denied 387 U.S. 907, 913, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967).