**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Martin MENDELSOHN,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert BENTSEN, Defendant–Appellant.**

**Nos. 88–5073, 88–5076.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 13, 1989.

Decided Feb. 20, 1990.

**1184**

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal. and Mary Elizabeth Kelly, Bel Air, Cal., for the defendants-appellants.

Harriet M. Rolnick, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, and CANBY, Circuit Judges, and EZRA,* District Judge.

* The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

CANBY, Circuit Judge:

Martin Mendelsohn and Robert Bentsen appeal convictions for conspiring to transport and aiding and abetting the interstate transportation of wagering paraphernalia, in violation of 18 U.S.C. §§ 371, 1953. The item they transported was a computer disk containing a program to aid in bookmaking. Both defendants were sentenced to three years probation. We affirm the judgments.

## BACKGROUND

Mendelsohn and Bentsen mailed a computer floppy disk from Las Vegas, Nevada to California, to one Michael Felix, an undercover policeman posing as a bookmaker. The disk was encoded with a computer program called SOAP (Sports Office Accounting Program).

SOAP provided a computerized method for recording and analyzing bets on sporting events. The floppy disk had limited storage capacity; the instructions consequently directed the user to copy the program from the floppy disk onto the hard disk of a computer, and then to use the hard disk to run the computer operation and store data. Once copied into the computer, SOAP could be used to record and review information about game schedules, point spreads, scores, customer balances, and bets. A SOAP user could calculate changing odds and factor in a bookmaker's fee to bets. The operator could quickly erase all records, although the records could be retrieved by using another special program.

Bentsen demonstrated the SOAP program to Felix and offered future assistance. SOAP advertisements promised unlimited telephone support to customers. The defendants knew that most customers used SOAP for illegal bookmaking. The defendants also sold SOAP to bettors and tried unsuccessfully to sell it to legal sports bookmakers and to game companies.

## DISCUSSION

### 1. *The First Amendment Defense*

■ The defendants contend that SOAP is speech protected by the first amendment. They compare it to an instruction manual for a computer. They note that computer programs have qualified under the copyright laws as literary works and works of authorship. *See Apple Computer, Inc. v. Formula Int'l, Inc.* 725 F.2d 521 (9th Cir. 1984); 17 U.S.C. §§ 101, 102(a).

Mendelsohn proposed an instruction informing the jury that it could not convict unless it found that "it was the intent of one or both of the defendants and the tendency of the computer program at issue here to produce or incite any lawless act, which was in fact likely to occur...." This proposed instruction tracks language in *Brandenberg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969) ("[A] State [may not] ... proscribe advocacy of ... law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.")

The district court rejected the defendant's First Amendment defense, ruling that

> [t]he acts for which Defendants have been indicted are too close in time and substance to the ultimate criminal conduct, making a defense based on the First Amendment inapplicable. There is no evidence in this case that any speech by Defendants was directed to ideas or consequences other than the commission of a criminal act. This is not a situation in which Defendants were addressing themselves, for example to the unfairness of state or federal gambling laws.

The defendants were entitled to their proposed instruction if it was "supported by law and ha[d] *some* foundation in the evidence." *United States v. Escobar de Bright,* 742 F.2d 1196, 1198 (9th Cir.1984) (emphasis in original).[1] For a first amendment instruction to meet these require-

ments, there must be some evidence that the defendants' speech was informational in a manner removed from immediate connection to the commission of a specific criminal act. *See United States v. Freeman,* 761 F.2d 549, 551 (9th Cir.1985) *cert. denied,* 476 U.S. 1120, 106 S.Ct. 1982, 90 L.Ed.2d 664 (1986) (First Amendment defense for defendant who gave false tax information at seminars).

The defendants rely upon *United States v. Dahlstrom,* 713 F.2d 1423 (9th Cir.1983), *cert. denied* 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984), where the defendant gave seminars instructing others how to set up tax shelters of questionable legality, but did not set up the tax shelters himself. We stated that, under those circumstances, the defendant could assert a first amendment defense. *Id.* at 1428. We find *Dahlstrom* distinguishable. Here, Mendelsohn and Bentsen did not use SOAP to instruct bookmakers in legal loopholes or to advocate gambling reform. They furnished computerized directions for functional use in an illegal activity. There was no evidence that the defendants thought Felix was going to use SOAP for anything other than illegal bookmaking. On the contrary, the defendants knew that SOAP was to be used as an integral part of a bookmaker's illegal activity, helping the bookmaker record, calculate, analyze, and quickly erase illegal bets.

The question is not whether the SOAP computer program is speech, but whether it is protected speech. "Where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." *United States v. Freeman,* 761 F.2d at 552 (no first amendment defense when defendant helped file a false income tax return); *see also United States v. Aguilar,* 883 F.2d 662, 685 (9th Cir.1989) (defendants showed alien where and how to cross border illegally); *United States v. Schulman,* 817 F.2d 1355 (9th Cir.), *cert. denied,* 483 U.S. 1042,

---

1. We have reviewed denials of a defendant's proposed jury instruction on his theory of the case under both de novo and abuse of discretion standards. *United States v. Davis,* 876 F.2d 71,

72 (9th Cir.), *cert. denied* — U.S. ——, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989). We need not decide the standard of review here because the outcome is the same under either. *See id.*

108 S.Ct. 362, 97 L.Ed.2d 803 (1987) (defendant reported false loans stemming from financing transactions); *United States v. Solomon*, 825 F.2d 1292 (9th Cir.1987), *cert. denied* 484 U.S. 1046, 108 S.Ct 782, 98 L.Ed.2d 868 (1988) (defendant helped create and manage illegal tax shelters); *United States v. Kelley*, 864 F.2d 569 (7th Cir.) *cert. denied*, —— U.S. ——, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989) (defendant sold tax shelters, participated in closings, and received commissions).

Although a computer program under other circumstances might warrant first amendment protection, SOAP does not. SOAP is too instrumental in and intertwined with the performance of criminal activity to retain first amendment protection. No first amendment defense need be permitted when words are more than mere advocacy, "so close in time and purpose to a substantive evil as to become part of the crime itself." *United States v. Freeman*, 761 F.2d at 552. We conclude that the SOAP computer program was just such an integral and essential part of ongoing criminal activity. The district court did not err in rejecting the defendant's proposed jury instruction based on the first amendment.

### 2. *Overbreadth*

■ The defendants argue that 18 U.S.C. § 1953 is overbroad because it proscribes "knowing" interstate transport of wagering paraphernalia, but does not require that the distributor "intend" to incite illegal activity, thus proscribing some protected speech. To invalidate a statute on this ground, the overbreadth must be substantial in comparison with the statute's legitimate sweep. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *see also, New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (upholding a statute that prohibited distribution of obscene material despite arguably impermissible applications).

Section 1953 provides in part: "Whoever ... knowingly carries or sends in interstate ... commerce any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for use in (a) bookmaking; or (b) wagering pools with respect to a sporting event; ... shall be fined ... or imprisoned...." The statute exempts "any newspaper or similar publication." Nearly all of the wagering paraphernalia covered by Section 1953 is easily identifiable and unprotected by the first amendment. The overbreadth, if it exists, is far from substantial. We will not invalidate this statute simply because "there are marginal applications in which ... [it] would infringe on First Amendment values." *Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974).

### 3. *The "Newspaper or Similar Publication" Exception*

■ The district court ruled that SOAP was not a "newspaper or similar publication" under the exception to 18 U.S.C. § 1953. The exception was "primarily designed to exclude ... a newspaper or other publication containing racing results or predictions." H. Rep. No. 968, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.Code, Cong. & Admin.News 2634, 2636. "Similar publication" has not been fully defined, but it does include publications containing betting news, race results, and predictions of the outcome of races or games. *United States v. Kelly*, 328 F.2d 227 (6th Cir.1964). One can envision a computer disk containing such information, but SOAP did not. SOAP did not bring the bookmaker any news of the betting world. It contained no information about races, games, bets, or even betting strategy. Rather, SOAP helped computerize the bookmaker's system of keeping records and making bets. Classifying SOAP as a publication similar to a newspaper requires a stretch of the statutory language beyond the possible intention of Congress. The district court did not err in its ruling.

### 4. *A Device Designed for Use in Bookmaking*

■ The district court instructed the jury that, "A computer disk encoded with a software program is a device within the meaning of 18 United States Code § 1953."

The defendants contend that this definition was erroneous, and that the district court should have given the defense instruction that a "device" includes only "an object or thing upon which information regarding one or more bets are (or are intended to be) written or otherwise recorded." Bets could be recorded on SOAP, but generally were not because the SOAP disk had little space for recording information. SOAP instructions directed the user to copy SOAP onto his computer's hard disk, and then record the bets.

"Device" is not defined by statute or by case law. The defendants urge a narrow interpretation of "device" under the principle of *ejusdem generis*, on the theory that "device" is a general word following a list of more specific words which describe items used to record illegal bets. The defendants' argument fails because "device" follows a number of equally general, non-defined and non-specific words in § 1953, such as "paraphernalia," "paper," and "writing."

Although Congress heard testimony regarding items used to record bets, such as blank lottery tickets, bookmaker's records, and flash paper, it did not limit § 1953 to those or similar items. On the contrary, Congress employed broad language to "permit law enforcement to keep pace with the latest developments ..." because organized crime has shown "great ingenuity in avoiding the law." S.Rep. No. 589, 87th Cong., 1st Sess., p. 3. Congress intended Section 1953 to ban the interstate commerce of records of bets and accounts, "and other material utilized in a bookmaking operation." H.Rep. No. 968, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.Code, Cong. & Admin.News 2634, 2635. The district court did not err, therefore, in instructing that a computer disk with a program was a "device," even though bets would not necessarily be recorded on it.

■ The defendants next argue that there was insufficient evidence to convict, because the prosecution did not prove that SOAP was designed for "substantially exclusive" use in illegal bookmaking. Section 1953 broadly proscribes devices "used, or to be used, ... or designed for use in ... bookmaking." The defendants offer no authority for the requirement of "substantially exclusive" use or design, but contend that Congress could not have intended to ban from interstate commerce every item used in a bookmaking business, from pencils to coffeemakers.

Whatever merit the defendants' argument may have with regard to such generic items as pencils, it does not encompass their computer program that was far more narrowly targeted for use in bookmaking. The few, if any, legal uses of SOAP by large bettors do not immunize SOAP's major, illegal use from the reach of § 1953. In this respect, the erasable feature of SOAP is comparable to flash paper, an instantly combustible paper that is used both by magicians to entertain and by illegal bookmakers to record bets on a medium that may quickly be destroyed in the event of a police raid. Flash paper may not be sent in interstate commerce if intended for use in illegal gambling. *See United States v. Scaglione,* 446 F.2d 182 (5th Cir.1971). Neither, we conclude, may SOAP.[2] Under this construction of § 1953, it follows that there was sufficient evidence so that "*any* rational trier of fact could have found" that SOAP was a device used or designed to be used in illegal bookmaking. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

**2.** The defendants point out that selling gaming devices without any further participation in illegal gambling is insufficient for prosecution under 18 U.S.C. § 1952, a companion statute which requires intent to facilitate the illegal activity. *United States v. Gibson Specialty Co.,* 507 F.2d 446, 451 (9th Cir.1974); 18 U.S.C. § 1952; *contra United States v. Rogers,* 788 F.2d 1472, 1476 (11th Cir.1986) (defendant need not associate with illegal venture for the purpose of advancing it; he need only make illegal activity easy or less difficult). Unlike § 1952, however, § 1953 does not explicitly require such intent. *See United States v. Fabrizio,* 385 U.S. 263, 265, 87 S.Ct. 457, 459, 17 L.Ed.2d 351 (1966) (government need not allege participation in illegal gambling to prosecute under § 1953).

#### 5. *Specific Intent to Violate the Law*

■ For the substantive offense, the district court gave a standard jury instruction defining the term "knowingly."[3] The district court rejected the defendants' proposed instruction that, in order to convict, the jury must find that the defendants acted "purposely intending to violate the law."

Congress prohibited "knowing" interstate transportation of gambling paraphernalia. 18 U.S.C. § 1953. "Knowing" usually connotes a general intent crime, especially when the words "willfully" or "with intent to" are absent. *United States v. Flores*, 753 F.2d 1499, 1505 (9th Cir.1985) (en banc). Consequently, the only court to face this issue held that a violation of § 1953 does not require specific intent to violate the law. *United States v. Marquez*, 424 F.2d 236, 240 (2nd Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970) (noting that the case involved obvious gambling paraphernalia and defendants not unaware of possible law violations); *see also United States v. Kohne*, 358 F.Supp. 1053 (W.D.Penn.1973) (no knowledge that act is unlawful is required for 18 U.S.C. § 1955, a related statute prohibiting illegal gambling operations). We agree, and decline to impose this heightened *mens rea* requirement urged by the defendants.

The defendants rely on *dicta* in *United States v. Erlenbaugh* suggesting that mere knowing transportation of a writing would be insufficient to convict a "wholly innocent person" who was unaware that the writing's contents were designed for use in bookmaking. *Erlenbaugh v. United States*, 409 U.S. 239, 247–248, 93 S.Ct. 477, 482–483, 34 L.Ed.2d 446 (1972) (holding that the newspaper exception to § 1953 did not apply to a companion statute). The defendants, however, are not such "wholly innocent person[s]," and the instruction they requested went far beyond the suggestion in *Erlenbaugh*. The defendants

knew quite well what SOAP contained, because they designed it, marketed it, and instructed others on its use. They may or may not have known that selling SOAP outside of Nevada was illegal, but the statute does not require that knowledge. The district court did not err in rejecting the defendants' requested intent instruction.

#### 6. *The Testimony of Mendelsohn's Former Attorney*

■ Mendelsohn told Detective Felix that his attorney said that selling SOAP was legal. He later told Felix that his attorney said he did not know what would happen if Mendelsohn sold SOAP interstate. Over defendants' objections, the district court found a limited waiver of the attorney/client privilege and permitted Mendolsohn's former attorney, Raby, to testify.[4] Raby testified that he told Mendelsohn that sending SOAP outside Nevada violated federal law.

Defendant Mendelsohn argues that there was no waiver because he did not truthfully disclose the advice his attorney gave him and he did not disclose a significant portion of attorney-client communication. He also questions the testimony's relevance, and if relevant, he argues that it was more prejudicial than probative. Defendant Bentsen claims prejudice by admission of the testimony against Mendelsohn, and appeals the denial of his motion for severance and mistrial.

We review de novo whether there has been a waiver of privilege. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir.1987). We review the district court's evidentiary rulings for abuse of discretion. *United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir.1989).

We agree with the district court that Mendelsohn's statement to Felix constituted a limited waiver of the attorney-client

---

3. The jury was instructed that, "[a]n act is done knowingly if the defendant realized what he or she was doing and did not act through ignorance, mistake or accident." *See* Manual of Model Jury Instructions for the Ninth Circuit, (1985 ed.) 84, § 5.08.

4. The government agrees that Mendelsohn's waiver occurred because of his disclosures to Felix, not because of a memorandum sent by his attorney to the government during negotiations.

privilege. *See Weil v. Investment/Indicators,* 647 F.2d 18, 24–25 (9th Cir.1981). Mendelsohn's intent or lack of intent to waive the attorney-client privilege is not dispositive. *Id.* Nor do we believe that the waiver is ineffective because Mendelsohn may have misstated what his attorney told him.

The district court was careful to confine the attorney's testimony to the subject of Mendelsohn's limited waiver. This case is therefore distinguishable from those in which a limited waiver was urged as a ground for opening a much larger field. *See In re Dayco Corp.,* 99 F.R.D. 616 (S.D.Ohio 1983) (release of two-page findings did not warrant discovery of entire report); *In re von Bulow,* 828 F.2d 94, 102–103 (2nd Cir.1987) (extrajudicial disclosure of privileged communications in a book did not waive privilege beyond "matters actually revealed"). The district court did not err with regard to the waiver.

Nor did the district court abuse its discretion in its other rulings related to the attorney's testimony. The testimony was relevant to show, among other things, unlawful intent in forming a conspiracy. *See* Fed.R.Evid. 401. The probative value could properly be found to outweigh any prejudice to Mendelsohn, under the standard of Fed.R.Evid. 403.

Finally, the admission of the evidence against Mendelsohn did not require a severance and a mistrial for Bentsen. The defendants proposed no jury instruction limiting the effect of the attorney's testimony, and none was given. The jury, however, could reasonably separate the evidence as it related to the two defendants, in light of the relative lack of complexity of the trial and the weight of the evidence against each defendant. *United States v. Catabran,* 836 F.2d 453, 460 (9th Cir.1988); *United States v. DeRosa,* 670 F.2d 889 (9th Cir.), *cert. denied,* 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982).

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

## CONCLUSION

As to both defendants Mendelsohn and Bentsen, we affirm the judgments of the district court.

AFFIRMED.